UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA J. HUBERT,

        Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION,

        Defendant.

CASE NO. 10-13831
HON. LAWRENCE P. ZATKOFF

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 12th day of September, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss Count IV of Plaintiff's

Complaint Pursuant to Rule 12(b)(6) (Docket #12) and Defendant's Motion to Dismiss Plaintiff's

Complaint Pursuant to Rule 16(f) and Rule 41(b) for Failure to Prosecute or, In the Alternative,

Pursuant to Rule 12(c) for Failure to State a Claim Upon Which Relief Can be Granted (Docket

#21).  Plaintiff filed a timely response to each motion, and Defendant filed a timely reply to each

response.  The Court finds that the facts and legal arguments pertinent to the motions are adequately

presented in the parties' papers, and the decision process will not be aided by oral arguments.

Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the motions be

resolved on the briefs submitted by the parties, without this Court entertaining oral arguments.  For

the reasons that follow, both of Defendant's motions are GRANTED, and Plaintiff's cause of action

is DISMISSED.

## II.  BACKGROUND

Plaintiff's Complaint sets forth the following factual allegations.

In May 2004, Plaintiff was a loan originator employed by National City Bank, where she

earned a base salary plus commission.  On May 26, 2004, Plaintiff obtained a mortgage loan from

Defendant's predecessor (hereinafter, such predecessor and Defendant PNC Bank, National

Association are referred to as "Defendant"), an entity related to her employer, in the amount of

$496,000.00.  At the time, the underlying property appraised for $640,000.00.  In November 2008,

while still employed by National City Bank, Plaintiff began attempts to obtain a loan modification

and a reduced mortgage payment from Defendant.  Plaintiff received a forbearance agreement from

Defendant and was permitted to make reduced payments from January 2009 to April 2009.  Plaintiff

also secured a four-month extension of that forbearance - through August 2009.  The purpose of the

forbearance agreement(s) was to allow Defendant time to collect information from Plaintiff and to

consider her loan for modification.

In June 2009, Plaintiff retained the services of Sheffield and Associates ("Sheffield") to

assist her in dealing with Defendant.  Sheffield specializes in assisting homeowners in their loan

modification negotiations with mortgage companies. Over the next 10 months, Defendant allegedly

refused to provide Plaintiff with a loan modification despite: (1) dozens of contacts between Plaintiff

(and/or Sheffield) and Defendant, (2) the submission of dozens of documents to Defendant, and (3)

Plaintiff explaining to Defendant the methods by which Defendant could modify Plaintiff's loans

to comply with the federal Home Affordable Modification Program ("HAMP").   Defendant allegedly only provided Plaintiff with one explanation for not granting Plaintiff a loan modification, *i.e.*, that "the investor" refused to modify her loan.  Plaintiff contends that she has qualified for a loan modification under HAMP (and/or a state law modification) from June 2009 to the present.

In April 2010, Defendant submitted Plaintiff's mortgage to Defendant's attorneys, Trott & Trott ("Trott"), to begin foreclosure proceedings.  On April 7, 2010, Trott sent a letter to Plaintiff on behalf of Defendant.  Therein, Plaintiff was informed of her rights under MCL §600.3205a to have a meeting with Defendant to discuss loan modification options.  Plaintiff timely requested the meeting, and Trott acknowledged the request on April 14, 2010.  Trott also requested financial information from Plaintiff that had been provided repeatedly to Defendant in the prior 12 months. On May 21, 2010, Plaintiff's counsel provided the requested information, including a hardship letter, financial worksheet (a form from Defendant), two paystubs, proof of pension income, proof of IRA distribution, two months of bank statements, 2009 W-2, 1009-R for 2009 and Plaintiff's 2008 IRS Form 1040 with schedules.  The documentation showed that Plaintiff's gross monthly income was $5,601.00 and her monthly housing expense was $3,154.71 (56.32% of her gross monthly income).[1]

A meeting between Plaintiff and Defendant was set for June 25, 2010, and Plaintiff, her attorney and an attorney from Trott attended.  The attorney from Trott informed Plaintiff that: (a) she did not qualify for a modification, and (b) Defendant recommended that Plaintiff sell her home on a short sale in order to satisfy the mortgage loan balance.  Upon inquiry from Plaintiff's attorney, the attorney from Trott said that the determination that she was not qualified under HAMP or state

---

[1]According to Plaintiff: (1) HAMP requires that the payment be reduced to 31% of gross monthly income, and (2) state law requires that the payment be reduced to 38% of gross monthly income.

law "was based upon the information that [Plaintiff] provided" and that "Plaintiff's monthly

expenses exceeded her net monthly income." Plaintiff's counsel then formally requested from Trott

a copy of the guidelines and calculations to which she was entitled under MCL §600.3205c(5). On

June 25, 2010, Defendant sent Plaintiff a letter advising Plaintiff that her loan modification request

had been denied because she had "deficit income."

On July 1, 2010, one person from Trott sent Plaintiff a letter that acknowledged receipt of

her letter requesting the guidelines and calculations to which she was entitled under MCL

§600.3205c(5). The same day, another person from Trott sent an email to Plaintiff's counsel

advising him that:

> You will receive the calculations you are requesting when a denial
> letter is issued for this file. At this time, we are confirming the
> figures that were used to come to that decision at the meeting. We
> will not be proceeding with foreclosure until this letter has been
> mailed.

On August 5, 2010, Plaintiff received a letter from Trott that a foreclosure sale had been scheduled

for August 31, 2010. In her response to Defendant's motion to dismiss Count IV, filed January 25,

2011, Plaintiff asserted that she still had never received a copy of the guidelines and calculations

from Defendant or Trott.

On August 25, 2010, Plaintiff filed the instant cause of action in Oakland County Circuit

Court. In her Complaint, Plaintiff asserted the following:

| | |
|---|---|
| Count I | Injunctive Relief |
| Count II | Violation of Mich. Comp. Laws § 600.3205c |
| Count III | Violations of RESPA (12 U.S.C. §§ 2601-2617) |
| Count IV | Violation of Home Affordable Modification Program |
| Count V | Intentional Misrepresentation |
| Count VI | Promissory Estoppel |
| Count VII | Unfair Competition |

Concurrent with the filing of her Complaint, Plaintiff sought, and was granted, a Temporary Restraining Order.  In addition to granting the Temporary Restraining Order, the Oakland County Circuit Court issued an Order to Show Cause to Defendant on August 25, 2010.  Defendant removed the case to this Court on September 24, 2010.  At that time and ever since, neither party has requested that this Court take any action with respect to the Temporary Restraining Order in place or with respect to the Order to Show Cause issued by the Oakland County Circuit Court.  All seven claims remain before the Court because of diversity jurisdiction.

Before any motions were filed in this Court, the Court conducted a scheduling conference in this matter on November 9, 2010, and issued a scheduling order for the case on November 15, 2010.  Counsel for both parties attended the scheduling conference and were provided copies of the scheduling order via ECF.  On January 6, 2011, Defendant filed its motion to dismiss Count IV, which the parties timely briefed.  The docket in this case reflects that, thereafter:

(1)     Defendant timely filed its witness list on April 26, 2011;

(2)     Plaintiff did not timely file, and still has not filed, a witness list;

(3)     Discovery was due by May 10, 2011;

(4)     On May 23, 2011, the Court signed a stipulated order extending the dispositive motion cut-off date from May 31, 2011 to August 1, 2011 because Plaintiff was not available for deposition until after May 30, 2011;

(5)     On June 29, 2011, Defendant filed a motion to compel Plaintiff to respond to Defendant's discovery requests[2] and to compel Plaintiff's appearance for deposition because Plaintiff had refused to appear;

(6)     On June 29, 2011, the Court referred the motion to compel to a magistrate judge and the motion remains pending;

---

[2]Defendant asserts that Plaintiff failed to respond to all of Defendant's discovery requests.

(7)     Plaintiff did not timely file, and still has not filed, a response to Defendant's June 29, 2011, motion to compel;

(8)     On July 19, 2011, Defendant filed an ex-parte motion seeking to adjourn the date by which to file its dispositive motion because Plaintiff had allegedly failed to prosecute the case and comply with her discovery obligations under the Federal Rules of Civil Procedure; and

(9)     On August 1, 2011, Defendant filed its motion to dismiss Plaintiff's complaint for failure to prosecute or, in the alternative, pursuant to Rule 12(c) (hereinafter, the "failure to prosecute motion"), a motion to which Plaintiff filed a timely response which contained relevant procedural and factual history of case (both of which are set forth above in this Section II) and a section titled "Law and Argument," which is set forth in its entirety in Section IV.B. below.

## III.  LEGAL STANDARD

**A.     Rule 12(b)(6)**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims.  The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992).  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

**B.      Rules 16(f)(1) and 41(b)**

Rule 16(f)(1) of the Federal Rules of Civil Procedure provides that "on motion or on its own, the Court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . (C) fails to obey a scheduling or other pretrial order." Pursuant to Rule 37(b)(2)(A)(v), the Court may dismiss an action as a sanction. In addition, it is well-settled that federal trial courts have the inherent power to manage their own dockets. *Link v. Wabash Railroad Co*., 370 U.S. 626 (1961). Rule 41(b) of the Federal Rules of Civil Procedure permits the Court to dismiss an action upon a showing of a clear record of delay, contumacious conduct, or failure to prosecute by a plaintiff. *See Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980).

## IV.  ANALYSIS

**A.      Count IV**

In its first motion to dismiss, Defendant argued that Count IV of Plaintiff's Complaint, an alleged violation of HAMP, must be dismissed for failing to state a claim upon which relief may be granted because HAMP does not provide for a private cause of action. The Court agrees.

Many courts, including at least one in the Eastern District of Michigan, have ruled on whether HAMP provides for a cause of action.  Virtually every court has held that HAMP does not provide for a private cause of action. *See, e.g., Hart v. Countrywide Home Loans, Inc.*, U.S. Dist. LEXIS 85272, \*13-14 (E.D. Mich. Aug. 19, 2010) (Duggan, J.).  *See also Singh v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 3563, \*23 (E.D. Cal. Jan. 7, 2011); *Inman v. Suntrust Mortg., Inc.*, 2010 U.S. Dist. LEXIS 91804 (E.D. Cal. Sept. 3, 2010); *Zeller v. Aurora Loan Servs. LLC*, 2010 U.S. Dist. LEXIS 80449, \*2 (W.D. Va. Aug. 10, 2010); *Hoffman v. Bank of Amer.*, 2010 U.S. Dist. LEXIS 70455, \*6 (N.D. Cal. June 30, 2010); *Simon v. Bank of Amer.*, 2010 U.S. Dist. LEXIS 63480, \*26-27 (D. Nev. June 23, 2010); *Marks v. Bank of Amer., N.A.*, 2010 U.S. Dist. LEXIS 61489, \*13-15 (D. Ariz. June 22, 2010) (citations and footnotes omitted).

Defendant quotes extensively from *Marks* to explain the rationale of such courts.  The *Marks* court first concluded that the legislative history of HAMP demonstrates that there is no express private right of action in HAMP:

> On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008 . . . ("EESA").  Section 109 required the Secretary of the Treasury ("the Secretary") to take certain measures in order to encourage and facilitate loan modifications.  12 U.S.C. §5219.  However, Section 109 did not create any private right of action against servicers for grievances relating to the EESA.
>
> The EESA authorized the Secretary of the Treasury, FHFA [Federal Housing Finance Agency], Fannie Mae, and Freddie Mac to create the Making Home Affordable Program on February 18, 2009, which consists of two components: (1) the Home Affordable Refinance Program, and (2) the HAMP.  The HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.

8

> The HAMP works by providing financial incentives to participating mortgage servicers to modify the terms of eligible loans. On March 4, 2009, the Secretary issued guidelines under the HAMP requiring lenders to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower was being evaluated for a modification. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (March 4, 2009).

> Per designation by the Secretary, Freddie Mac serves as compliance officer for the HAMP. U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009). The HAMP requires mortgagees to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program. See Supplemental Directive 2009-01, at 13-14, 19-21 (Apr. 6, 2009); Supplemental Directive 2009-06 (Sept. 11, 2009). As the compliance agent, Freddie Mac is charged with conducting "independent compliance assessments" including "evaluation of documented evidence to confirm adherence . . . to HAMP requirements" such as the evaluation of borrower eligibility. Supplemental Directive 2009-01, at 25-26.

On that basis, the *Marks* court concluded that:

> Nowhere in the HAMP guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.

*Id*. at *15 (citation omitted). The *Marks* court also concluded that no implied cause of action existed

under HAMP, *id*. at *17-18 and 20, as did the courts in the other cases cited above, including *Hart*

court. *Hart*, 2010 U.S. Dist. LEXIS 85272 at *13-14.

In response, Plaintiff argues that "other courts have not agreed" with the *Marks* court's

conclusion that the mortgage servicer "was not obligated to modify Plaintiff's loan . . . [but] only

to consider . . ." modifying it. Despite arguing that "other courts" have not agreed with the *Marks*

court, however, Plaintiff cited only one case where a court disagreed with the *Marks* court. *See*

*Marques v. Wells Fargo Home Mortg. Inc.*, Case No. 09-cv-1985-L(RBB) (S.D. Cal. Aug. 12, 2010). In *Marques*, the court ruled that the individual homeowner was an intended third-party beneficiary of the servicer participation agreement executed by the mortgage servicer and the Federal National Mortgage Association [*i.e.*, Fannie Mae/Freddie Mac]. Therein, the *Marques* court stated that:

> Participating servicers are *required* to consider all eligible loans under the program guidelines unless precluded by the rules of the applicable [pooling and servicing agreements] and/or other investor servicing agreements. Participating servicers are *required* to use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties. . . . Furthermore, "[e]*very* potentially eligible borrower who calls or writes in to their servicer in reference to a modification *must* be screened for hardship." . . . When a loan is at risk of imminent default or at least 60 days delinquent, the servicers are *required* to use a particular net present value on *each* such loan. . . . If the test is positive, "the servicer *must* modify absent fraud or a contract prohibition." The Program requires suspension of foreclosure proceedings during a borrower's trial modification period.
>
> * * * * *
>
> Upon a fair reading of the Agreement in its entirety and in the context of its enabling legislation, it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers. The Agreement on its face expresses a clear intent to directly benefit the eligible borrowers.

*Marques*, at 7-8 (emphasis in original) (citations deleted). Based on the foregoing, Plaintiff argues that there is "no mechanism by which the homeowners can petition [Fannie Mae and Freddie Mac] or any other government related entity to complain that the servicers are not complying with HAMP." Therefore, Plaintiff argues, the "sole method that the HAMP program will be enforced is to allow individual homeowners to challenge the wrongful denial of requested modifications."

10

Neither the Plaintiff's argument nor the reasoning of the *Marques* court persuade the Court

that Plaintiff has a cause of action under HAMP.  Rather, for the reasons set forth by the *Marks* court

(and in many of the similar cases cited above), the Court finds that Congress did not provide

homeowners such as Plaintiff with a private cause of action.  Specifically, the Court concludes that,

under HAMP, Congress elected to delegate compliance authority of HAMP to the Federal National

Mortgage Association (namely, Fannie Mae and Freddie Mac).

Accordingly, and for the reasons set forth above, the Court concludes that Count IV of

Plaintiff's Complaint must be dismissed.

**B.      Remaining Counts - Failure to Prosecute**

In its failure to prosecute motion, Defendant seeks dismissal of the remainder of Plaintiff's

Complaint because Plaintiff abandoned her case.  Defendant states that even though it believed

Plaintiff's Complaint failed to state a claim upon which Plaintiff can recover, Defendant has

attempted to investigate Plaintiff's allegations through the discovery process.  Despite its efforts,

Defendant states that Plaintiff:

> 1.      Did not cooperate with Defendant's requests for discovery.  More specifically,  Defendant argues that Plaintiff has not responded to Defendant's written discovery, which is now many months overdue.
>
> 2.      Refused to appear for her noticed deposition in May 2011 and has not cooperated in scheduling an alternate date.

 Plaintiff's conduct is the subject of Defendant's pending motion to compel, which seeks an "order

compelling Plaintiff to respond to Defendant's discovery requests, and to compel her for

deposition."  In addition, Defendant maintains that Plaintiff has done nothing to advance her own

position in this case, including failing to: (a) serve any discovery on Defendant, (b) file a witness

list in accordance with the Court's scheduling order, and (c) file a response to Defendant's motion

to compel.

In her response to Defendant's motion to dismiss for failure to prosecute, Plaintiff does not

dispute any of the foregoing representations by Defendant.   Rather, Plaintiff's response to

Defendant's contentions consists of the following (set forth in its entirety):

## LAW AND ARGUMENT

Plaintiff's Complaint contains allegations that Defendant failed to comply with both the Home Affordable Modification Program and the Michigan Foreclosure by Advertisement Statute MCL §600.3201 *et. seq.*  The majority of the allegations arise from Defendant's failure to follow the HAMP guidelines and therefore they violated the Michigan Foreclosure Statute MCL §600.3206c. The bulk of the allegations surround those issues.

Defendant has filed a Motion to Dismiss Count IV of Plaintiff's Complaint which, if granted, guts the majority of the issues contained in the other Counts of Plaintiff's Complaint.  In addition, as it was titled a Motion to Dismiss, if granted, Plaintiff may have the opportunity to amend her Complaint to include additional allegations to support that count and which would necessarily affect the other Counts.

Plaintiff's Complaint should not be dismissed for the reason that discovery can still be taken of her, depending on which counts that remain after Defendant's original Motion to Dismiss is decided and whether Plaintiff is given the opportunity to amend her Complaint.

Viewing the pleadings in the light most favorable to the Plaintiff, it is clear that she has stated a claim upon which relief can be granted.  Therefore, Defendant's Motion should be denied.

The Court does not find any of Plaintiff's "arguments" persuasive; instead, the Court concludes that,

for the reasons that follow, Plaintiff's cause of action should be dismissed and Plaintiff's "request"

to amend her Complaint should be denied.

12

First, pursuant to the Court's November 15, 2010, scheduling order (which Plaintiff has never moved or stipulated to have amended), discovery is now closed - and has been since May 10, 2011. Second, it is undisputed that Plaintiff has not: (1) requested discovery from Defendant, (2) provided Defendant with the discovery requested by Defendant, (3) appeared for a noticed deposition or cooperated in setting an alternate deposition date, or (4) even responded to Defendant's motion to compel her response to discovery requests and to appear for deposition. Third, not only did Plaintiff fail to satisfy her obligations during the discovery process, Plaintiff also failed to file a witness list, in violation of the Court's scheduling order. For these reasons, it has been impossible for Defendant to explore Plaintiff's claims. Moreover, by failing to contest Defendant's contentions that she has failed to prosecute the case, Plaintiff is deemed to admit all such contentions. *See, e.g.*, *United States v. Harris*, 200 Fed.Appx. 472, 506 (6th Cir. 2006) (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n.13 (6th Cir. 2005)); *Humphrey v. U.S. Atty. Gen. Office*, 279 Fed.Appx. 328, 331 (6th Cir. 2008). As such, the Court finds that Plaintiff has failed to prosecute her cause of action.

Fourth, although it is typical for the Court to rule on a motion to dismiss that is filed prior to issuing a scheduling order, it is not unusual for the Court to abstain from considering and ruling on a motion to dismiss filed after the scheduling order has been issued. The reason for this is that there is almost always a corresponding dispositive motion that is filed after the discovery period closes and the motions can be decided at one time. In this case, Plaintiff never asked the Court to determine the initial motion to dismiss Count IV, nor did Plaintiff request that discovery be stayed pending the resolution of the viability of Count IV. Rather, as with her approach to the discovery process, Plaintiff did nothing.

Fifth, the Court finds that Plaintiff has not provided the Court with any good reason or cause

for allowing Plaintiff to amend her Complaint following the dismissal of Count IV.  The absence

of good cause is particularly significant in this case, where Plaintiff acknowledges that dismissal of

the HAMP claim in Count IV "guts the majority of issues found in the other Counts of Plaintiff's

Complaint."   Sixth, although Plaintiff mentions she "may have the opportunity to amend her

Complaint" if Defendant's motion to dismiss Count IV is granted, she never has moved the Court

to amend her Complaint.  Seventh, the Court finds that, contrary to Plaintiff's suggestion/hope, any

amendment of Count IV would be futile absent Sixth Circuit or Supreme Court precedent holding

that an individual may bring a private cause of action under HAMP.  Plaintiff has not cited any such

precedent to the Court.  For these reasons, the Court concludes that, to the extent that Plaintiff seeks

to amend her Complaint, such a "request" is, and would be, denied.

Accordingly, and for the reasons stated above, the Court concludes that Plaintiff's case

should be dismissed for lack of prosecution pursuant to Fed. R. Civ. P. 16(f) and 41(b).  *See Becton*

*v. Boatmen's Bank of Memphis*, 1988 U.S. App. Lexis 13508 (6th Cir. Sept. 30, 1988) (affirming

the district court's dismissal of the plaintiff's case pursuant to Fed. R. Civ. P. 16(f) for failing to

appear at a scheduling conference and failing to respond to a motion).  *See also Carter*, 636 F.2d

at 161.

The Court also notes that Plaintiff did not address Defendant's well-reasoned and supported

arguments why each of Plaintiff's six remaining claims (those other than Count IV) should be

dismissed for failure to state a claim.  Instead, Plaintiff simply responded with a conclusory

statement that "she has stated a claim upon which relief can be granted."  As this response fails to

counter in any substantive manner the arguments set forth by Defendant, the Court once again

14

concludes that Plaintiff shall be deemed to have admitted to the validity of Defendant's arguments.

*See Humphrey, Harris and Caudill, supra*.  Therefore, for this reason and for the reasons set forth

in Defendant's brief, the Court would also dismiss the balance of Plaintiff's Complaint for failure

to state a claim upon which relief can be granted.

### V.  CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that

Defendant's Motions (Docket #s 12 and 21) are GRANTED and Plaintiff's cause of action is

DISMISSED WITH PREJUDICE.  Judgment shall be entered accordingly.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE


Dated:  September 12, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys
of record by electronic or U.S. mail on September 12, 2011.


S/Marie E. Verlinde
Case Manager
(810) 984-3290


15